## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM SCHAFFHOUSER, | Case No. _____ |
| Plaintiff, | |
| v. | |
| TRANSEDGE TRUCK CENTERS and JOHN MARTIN, | |
| Defendants. | |

## COMPLAINT

Plaintiff, William Schaffhouser, by and through his counsel, Mobilio Law, LLC, and the Law Office Peter C. Wood, Jr., PC, brings this action against Defendant, TransEdge Truck Centers, and alleges upon knowledge as to himself and his own acts, and otherwise upon information and belief, as follows:

## INTRODUCTION

1.    Plaintiff brings the instant action to redress harm caused by Defendant's violations of his rights as secured by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §120101 *et seq*. ("ADA") and in pursuit of claims for Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress.

## PARTIES

2.      Plaintiff William Schaffhouser ("Plaintiff") is an adult individual residing at 6915 Broadtail Ct., New Tripoli, PA 18066.

3.      Defendant TransEdge Truck Centers ("Defendant TransEdge") is a business organization located at 1407 Bulldog Drive, Allentown, PA 18104.

4.      Defendant John Martin ("Defendant Martin") is an adult individual with a business address of 1407 Bulldog Drive, Allentown, PA 18104.

5.      At all times relevant and material herein, Defendant TransEdge acted by and through its agents, servants, and employees, each of whom acted in the course and scope of their employment with and for Defendant TransEdge.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1331 because this civil action arises under a law of the United States and seeks redress for violations of a federal law.  This Court has jurisdiction over Plaintiff's state law claims because they are supplemental to Plaintiff's underlying federal claims and derive from a common nucleus of operative facts pursuant to 28 U.S.C. § 1367.

7.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice.

8.      Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      On or about September 25, 2019, Plaintiff dual-filed a charge of discrimination wit the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC"), alleging that Defendant TransEdge unlawfully discriminated against him on the basis of his disability.

10.     On November 4, 2019, the EEOC issued a Notice of Suit Rights to Plaintiff.

## FACTUAL ALLEGATIONS

11.     In or around March 18, 2019, Defendant TransEdge hired Plaintiff as a salesperson.

12.     Plaintiff was an exemplary employee of Defendant TransEdge having received no disciplinary action whatsoever, up until Defendant TransEdge terminated Plaintiff's employment.

13.     As of the date of his employment and continuing thereafter, Plaintiff suffered from a heart condition known as Atrial Fibrillation or "AFib" for which he received treatment and medication.

14.     On Plaintiff's second day of work, March 19, 2019, while Plaintiff conversed with Sean Beige, another salesperson, their Sales Manager, Defendant John Martin called Plaintiff into his office by stating, "Helen Keller, come in here," mocking Plaintiff by suggesting that Plaintiff was both deaf and blind.

15.     Defendant Martin continued to call Plaintiff "Helen Keller" on approximately fifteen (15) occasions over the course of the next several months.

16.     Additionally, Defendant Martin would summon Plaintiff by slapping his thigh, as if calling for a dog to come, and saying "come here, come here . . ."

17.     As Defendant Martin was Plaintiff's direct supervisor, Plaintiff frequently was required to interact with him in the course of his employment with Defendant TransEdge and relied on Defendant Martin for instruction, advice, supervision and work assignments.

18.     However, while the aforementioned events were occurring, Defendant Martin would refuse to respond to any of Plaintiff's questions or requests regarding work.

19.     On numerous occasions, Plaintiff would go to Defendant Martin's office and attempt to communicate with Defendant Martin only to be met with Defendant Martin's refusal to even acknowledge Plaintiff's presence in his office, ignoring Plaintiff's questions and/or otherwise dismissing Plaintiff without addressing any of his questions or concerns.

20.     This inability to communicate with a direct supervisor made Plaintiff's performance of his job nearly impossible.

21.     For the most part, the only times that Defendant Martin would actually speak to Plaintiff was to mock him, mock one of Plaintiff's coworkers, or to harass Plaintiff for trivial matters.

22.     For instance, Defendant Martin stopped by Plaintiff's office on five (5) separate occasions in one day to complain that Plaintiff had a single sheet of wrinkled paper on his desk.

23.     Defendant Martin was also routinely mock or complain about other employees of Defendant TransEdge, causing Plaintiff concern that he too was being spoke of negatively to his co-workers.

24.     For instance, Defendant Martin:

   a.  Referred to the General Manager "Jeff" as a "worthless piece of shit";

   b.  Referred to Karen in HR as a "no good, worthless piece of shit";

   c.  Referred to the manager of the leasing department, "Garrett" as a "piece of shit";

   d.  Referred to a group of female employees as "estrogen row" and advised that one of them sold "vibrators" for a living; and

25.     Defendant Martin also advised Plaintiff that he's "been in trouble so many times and there's nothing anyone could do about it".

26.     In late May 2019, Plaintiff lodged a formal complaint against Defendant Martin with Defendant TransEdge's Human Resources Department.

27.     Plaintiff spoke with an HR Representative named "Karen" and relayed the aforementioned conduct of Defendant Martin.

28.     Karen told Plaintiff that several other employees of Defendant TransEdge had also lodged formal complaints against Defendant Martin regarding his abusive conduct and further advised Plaintiff that, "we've talked to him many times.  We're going to handle this."

29.     Karen then remarked to Plaintiff that he did not look well and advised Plaintiff to go home and lay down, which Plaintiff did.

30.     Plaintiff later found out that the stress he experienced from working with Defendant Martin had actually caused him to go into AFib, a condition that Plaintiff had previously successfully managed through medication.

31.     The following morning, Defendant TransEdge's Vice President, Scott Kress, called Plaintiff into his office and asked, "why did you have to go to HR on [Defendant Martin]?"

32.     Plaintiff then relayed all of the aforementioned instances of Defendant Martin's conduct, to which Mr. Kress responded, "we all know how John is, and you don't have to be afraid of him."

33.    Following Plaintiff's conversation with Mr. Kress, Plaintiff, fearing that Defendant Martin's conduct would not be addressed, and that Plaintiff's job was therefore in jeopardy, began to feel sick, left work, and went to the emergency room for medical treatment.

34.    While at the emergency room, the treating physician determined that Plaintiff was in AFib with a heart rate of 151 bpm.

35.    In response Plaintiff was put on a blood thinner, and his current AFib medication dosage was doubled.

36.    Upon hearing about the conduct of Defendant Martin and the psychological toll those events had taken on Plaintiff, Plaintiff's treating physician also diagnosed Plaintiff with anxiety and depression and prescribed him medication.

37.    Plaintiff's treating physician took Plaintiff out of work for the following day, which was the Friday before Memorial Day.

38.    While still in the ER, Plaintiff's wife contacted Karen from HR and advised that Plaintiff suffered a heart issue and would not be returning to work that day.

39.    The following Tuesday morning, Plaintiff awoke to immediate anxiety and chest pain at the thought of returning to work that day.

40.     Nevertheless, Plaintiff returned to work where he was again ostracized by receiving little to no communication from anyone at Defendant TransEdge, including Defendant Martin.

41.     The following morning, Plaintiff awoke feeling even worse than the day before and proceeded to the ER where the treating physician determined that Plaintiff was once again in AFib.

42.     At that time, the treating physician discussed the possibility of surgical intervention to treat Plaintiff's heart condition.

43.     Plaintiff's treating physician kept Plaintiff overnight for observation and held Plaintiff out of work for the rest of the week.

44.     Plaintiff returned to work on June 3, 2019.

45.     On or about June 3, 2019, Plaintiff advised Karen and Mr. Kress that he had been out of work due to the worsening of his heart condition which resulted from Defendant Martin's conduct.

46.     Plaintiff informed Karen and Mr. Kress that his physician recommended surgical intervention in the near future for his heart condition and that following the proposed surgery, Plaintiff may need an accommodation in the form of additional time off from work to recover.

47.     On June 22, 2019, Mr. Kress called Plaintiff into his office and terminated Plaintiff's employment with Defendant for an alleged policy violation.

48.     Specifically, Mr. Kress complained that he did not believe Plaintiff, who typically traveled several days a week as part of his job duties, was in the office a sufficient amount.

49.     Mr. Kress' allegation was clearly pretext for a discriminatory motive for Plaintiff's termination as Plaintiff's presence in the office was not necessary for his job, the amount of time he was in the office had not changed since his date of hire (other than for health related reasons) and Plaintiff's co-worker, Sean Beige, who performed similar duties as Plaintiff was present in the office the same amount as Plaintiff.

## COUNT I

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. §12101 *et seq.*: TERMINATION (Plaintiff v. Defendant TransEdge)**

50.     The above paragraphs are incorporated below as if fully set forth at length below.

51.     At all times relevant and material herein, Plaintiff was an "employee" as defined by 42 U.S.C. § 12111(4).

52.     At all times relevant and material herein, Defendant was Plaintiff's "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and employed over 50 persons.

53.     Plaintiff's AFib, anxiety and depression, substantially limited his ability to concentrate, think, communicate and work, among other things.

54.     In addition, or in the alternative, Defendant regarded Plaintiff as having impairments due to Plaintiff's AFib, anxiety, and depression.

55.     Plaintiff's AFib, anxiety, and depression each therefore constitute a "disability" as defined by 42 U.S.C. §12102(2).

56.     At all times relevant and material herein, Plaintiff was capable of performing the essential functions of his employment position with or without reasonable accommodations.

57.     42 U.S.C. § 12112(a) provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ."

58.     Defendant's conduct in terminating Plaintiff due to his disabilities constitutes unlawful discrimination.

59.     Defendant's conduct was intentional, deliberate, willful, and conducted in callous disregard of Plaintiff's rights, warranting an award of punitive damages.

60.     Plaintiff has been injured as a result of Defendant's conduct in that he has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption,

psychological and emotional harm, economic losses, and lost employment opportunities.

## COUNT II

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Plaintiff v. Defendant TransEdge)**
**(Vicarious Liability)**

61.    The above paragraphs are incorporated below as if fully set forth at length.

62.    Defendant TransEdges sales manager, Defendant Martin, subjected Plaintiff to a three (3) month campaign of degradation, humiliation, and dehumanization that was extreme, outrageous and intentional or, in the alternative, negligent.

63.    At all times material hereto, Defendant was aware of Defendant Martin's conduct towards Plaintiff and towards other employees who lodged formal complaints against Defendant Martin, yet Defendant took no action, or in the alternative took inadequate action, to remedy the situation.

64.    The conduct engaged in by Defendant Martin constitutes reckless indifference to the rights of Plaintiff sufficient to subject Defendant Martin to punitive damages.

65.    As Defendant Martin's employer, Defendant TransEdge can be held vicariously liable for his conduct.

66.     As a result of DefendantMartin's extreme and outrageous conduct, Plaintiff has suffered, and continues to suffer, extreme emotional distress, humiliation, depression, embarrassment, anguish and anxiety and has suffered a physical manifestation of said distress in the form of an exacerbation of his AFib

## COUNT III

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Plaintiff v. Defendant TransEdge)**
**(Vicarious Liability)**

67.     The above paragraphs are incorporated below as if fully set forth at length.

68.     Defendant TransEdge's sale manager, Defendant Martin, subjected Plaintiff to a three (3) month campaign of degradation, humiliation, and dehumanization that was extreme, outrageous and intentional or, in the alternative, negligent.

69.     At all times material hereto, Defendant was aware of Defendant Martin's conduct towards Plaintiff and towards other employees who lodged formal complaints against Defendant Martin, yet Defendant took no action, or in the alternative took inadequate action, to remedy the situation.

70.     As Defendant Martin's employer, Defendant TransEdge can be held vicariously liable for his conduct.

71.    As a result of Defendant Martin's extreme and outrageous conduct, Plaintiff has suffered, and continues to suffer, extreme emotional distress, humiliation, depression, embarrassment, anguish and anxiety and has suffered a physical manifestation of said distress in the form of an exacerbation of his AFib

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Plaintiff v. Defendant Martin)

72.    The above paragraphs are incorporated below as if fully set forth at length.

73.    Defendant Martin subjected Plaintiff to a three (3) month campaign of degradation, humiliation, and dehumanization that was extreme, outrageous and intentional.

74.    The conduct engaged in by Defendant Martin constitutes reckless indifference to the rights of Plaintiff sufficient to subject Defendant to punitive damages.

75.    As a result of Defendant Martin's extreme and outrageous conduct, Plaintiff has suffered, and continues to suffer, extreme emotional distress, humiliation, depression, embarrassment, anguish and anxiety and has suffered a physical manifestation of said distress in the form of an exacerbation of his AFib

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered in his favor and against Defendants in the following respects:

a) An order awarding damages on all counts herein, including punitive damages;

b) An order awarding attorneys' fees and expenses pursuant to 42 U.S.C. 12205 on all counts herein; and

c) All other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

Respectfully submitted,

**Mobilio Law, LLC**

Date:  12-9-19

BY:   *s/ Matthew Mobilio*
Matthew Mobilio, Esq. (I.D. No. 209439)
609 W. Hamilton St., Suite 301
Allentown, PA 18101
Phone: (610) 882-4000
Fax: (866) 793-7665
matt@mobiliolaw.com

**Law Office of Peter C. Wood, Jr., PC**

BY:   *s/ Peter C. Wood, Jr.*
Peter C. Wood, Jr., Esq. (I.D. No. 310145)
1170 Route 315, Suite 1
Wilkes-Barre, PA 18702
Phone: (570) 234-0442
Fax: (570) 266-5402
peter@pcwlawoffice.com